Good morning, I'm Kevin McCardle for the Department of Justice, and may it please the Court. I'll be taking 14 minutes of appellant's time, with the interveners taking the remaining 6, and I'd like to reserve 4 minutes for rebuttal with the Court's permission. Sure. So the plaintiffs in this case challenged the Department's position on the proper knowledge and structure in a criminal case brought under the Endangered Species Act. The Department's position has been the same for 20 years, through 4 separate administrations, and the reason for that longevity is the Department's decision is based on an important but wholly apolitical consideration and objective, and that's to ensure that the Department prosecutes ESA violations in a manner that's consistent with Supreme Court precedent. We can't revisit McKittrick here. We're just a three-judge panel. That's correct. Another three-judge panel, right? That's correct. And so if we take that as binding in the Ninth Circuit, then what? That means that the Department is authorized within the Ninth Circuit to pursue criminal prosecutions under the McKittrick instruction. It doesn't mean that the Department's required to do so. This Court didn't order us to prosecute individuals who take Mexican wolves by mistake. It didn't order the Department to request the jury instruction in future prosecutions. The Department retained its discretion to decide to pursue prosecutions under an alternative instruction that the Department believes would withstand Supreme Court review, and that's exactly what we did here, and that's why this policy has been in place for so long. It's designed to ensure consistency with Supreme Court precedent, and it does that. The District Court in this case entered a couple of orders that struck me as thoughtful and careful and grappling with some pretty interesting issues. But in several places he described this McKittrick memo as a non-enforcement policy. Is it a non-enforcement policy? Well, strictly speaking, the memo communicates to Department attorneys the Solicitor General's decision that he made in response to Mr. McKittrick's petition for certiorari, that the Department would no longer request the McKittrick jury instruction. So at bottom, it's a decision not to pursue prosecutions under a particular jury instruction. Well, is it a decision not to pursue prosecutions under a particular standard, or is it a decision that if you're – because you pursued some. Your briefing explains to us that you have pursued some. It seems to me that it is a decision not to request a certain instruction, and I'm not sure why that matters since DOJ doesn't instruct juries. District Court judges instruct juries, and they're bound by McKittrick, right? At least in the ninth. That's correct, but the Department has the discretion to request those instructions that it believes would stand appellate review at all levels, including at the Supreme Court. So you're right. So strictly speaking, the memo is a decision not to request a particular jury instruction. That's what it says. Don't request this jury instruction. Right, and is there some reason we should think that whether the DOJ requested a jury instruction or not, that a district court judge would deviate from McKittrick as binding authority in the Ninth Circuit? Well, it's possible if the court felt that McKittrick had been implicitly overruled in the time since. But the judge – The court being, in that sentence, court being a district court or hypothetical district court judge. Correct. So, okay, so it would be then incumbent upon an AUSA prosecuting one of these cases, if that's our hypothetical, to convince a district court judge that even in spite of McKittrick, that there's intervening authority that changes. And they'd have to go through the, I guess, Sweet Home and Staples and all of that discussion and convince a district court judge that he or she ought to instruct the jury contrary to McKittrick. Well, I guess it's also possible that the district court could provide our preferred instruction, you know, without necessarily running afoul of McKittrick, since our instruction subsumes the elements of proof that would be required under McKittrick. But I think the threshold decision a prosecutor faced with the one scenario that implicates this McKittrick instruction, where an individual claims he took a Mexican wolf by mistake and the prosecutor has no evidence to the contrary, I think the threshold determination as to whether to bring charges in that scenario would be influenced by the department's position on appropriate jury instructions, because our position is the instruction. Well, that's certainly plaintiff's argument. I'm just not sure it's right. There's a lot baked in there, a lot of assumptions baked in there, it seems to me. But you've answered my question, so. Well, I'd like to turn to the threshold question of standing. Since this case, as far as we can tell, marks the first time that any court ever has held that the department's policy on how and when to pursue criminal prosecutions is subject to judicial review, and that a plaintiff who hasn't been prosecuted or threatened with prosecution has standing to challenge a department's criminal enforcement policy. My question is that the plaintiff has not been prosecuted or threatened with prosecution at this point, right? That's correct. Nor anybody in their group. That's correct. So they are only bringing this based on the fact that that might happen in the future, is that it? No, they're not asserting any threat of prosecution, whether imminent or remote. They're challenging the government's policy on the theory that it eliminates the ESA's deterrent effect, and that if this court would issue a declaratory judgment invalidating the policy, there would be more prosecutions that would result in greater deterrence. That's their theory. So what evidence is there that shows that more people are shooting wolves now as a result of the policy? There's no evidence whatsoever. The record's clear, and this is in the declaration of Nick Chavez, who's the supervisory law enforcement officer for New Mexico and Arizona, and what he explains is that the reasons why people shoot Mexican wolves are unknown, because the shooters are not identified in most cases. So why these individuals are motivated to shoot wolves is speculative. It's conjecture. When we talk about standing, maybe you could help me out on this, because there's the motion to dismiss where the judge discussed standing at length, and then the summary judgment motion, he repeatedly says, I'm not revisiting my standing analysis. But, of course, the information you're talking about now, the statements in the record in the form of the declaration, that was submitted at the summary judgment level. Correct. Not at the 12B1 level. That's correct, Your Honor. And so the judge had an obligation to revisit standing under the separate standards that apply at summary judgment. And he said he wasn't going to do that. Correct. So what do we do with that? Because at the 12B1 level, I think, counsel, he's assumed, getting back to Judge Smith's question, he assumed that there was a deterrent effect to this general intent statute that he thinks Congress adopted. He just took that as a given. And it's a motion to dismiss. So he, since that was an allegation in the complaint, he accepted it as true. But at summary judgment, then, he proceeded as you've described. What should we do about that? Well, the court has to decide, the court has the power to decide standing de novo, so the court can decide the issue on its own. And so, this court? Correct. All right. And so are you asking us then, and I'm not trying to be tedious, but I really want to make sure I understand your position on this. At standing, if we decide standing, is it your position that all of the declarations are fair game and we should consider them? Yes. All right. To the extent they're admissible. And as I understand it, the government evidence is that the government can't ID shooters in the vast majority of killings, that the FWS could ID only 14 of the shooters in 130 killings. Is that true? Only 14 were referred to the Department for Criminal Prosecution. And only 55, I believe, or maybe a slightly higher number of the 130, were determined to be the result of illegal killings, just for clarity. And charges were brought in for? Criminal charges were brought in for cases. And three had administrative or civil punishments? Correct. So could we say that even if there were a problem, there would be only seven more prosecutions? I don't think there's a basis for that inference because in six of the cases, the Department of Interior didn't even pursue strict liability administrative penalties. So there's no basis for assuming that those cases would have been criminally prosecuted but for the Department of Justice's jury instruction policy. Well, I'm just trying to go through the evidence here because I just want to make sure what we've got. Could I say that in the Ninth Circuit, there would only be one more case since 1998 that a prosecution would have been taken? No, in the Ninth Circuit, there's no additional cases where a prosecution would have been brought. The operative date for standing is the date the operative complaint was filed, which is August 2015. Between 1998 and 2015, two cases were referred to the Department of Justice for criminal prosecution. And the first one, according to plaintiff submissions, and this is at ER 241 or 243, it says the defendant claimed that he shot the wolf to protect his dog or in self-defense. He never claimed he shot the wolf by mistake. So that one doesn't implicate the Department's jury instruction policy. The second case, we successfully criminally prosecuted. And since that time, there hasn't been one case referred to the Department, which we've declined to prosecute for any reason. And this is important, too. The absence of additional referrals has nothing to do with our policy. How do we know that? Because that's one of their arguments. The declaration, the only person in this case who submitted a declaration who has knowledge of any potential interaction between our policy and illegal killings of Mexican wolves is Nick Chavez, because he's the supervisory law enforcement officer for the Fish and Wildlife Service responsible for the Southwest region. And he said in his declaration that the reason there hasn't been more referrals has nothing to do with McKittrick or our jury instruction position. It has to do with the Fish and Wildlife Service's inability to identify the shooter in most cases. There is no contrary evidence on that point. So to sum it up, there's never been one case within the Ninth Circuit where we've declined to prosecute because of the McKittrick memorandum. And even if they were to win, aren't we at the point where the Department of Justice would only be forced to determine on a case-by-case basis whether to prosecute offenders who take a Mexican gray wolf without knowing the biological identity of the animal? Absolutely. A declaratory judgment, which is all that the plaintiffs seek, would not require a prosecutor in such a future case to pursue criminal charges. Well, they can't, and they've acknowledged that. Right. And so the theory of redressability is entirely speculative because it's all based on the assumption that additional prosecutions will bring more deterrence. Right, and that's why it seemed to me to be important that in the motion to dismiss where the judge really grappled with standing, he accepted that assertion as true. He accepted that there was a deterrent effect to the statute as written by Congress. Right, but as a matter of law, even at the pleading stage, the declaratory judgment they sought at the pleading stage would not – the same problem with redressability existed at both the pleading stage and at summary judgment because as a matter of law, a declaratory judgment would not require us to pursue criminal charges in any future case. So while additional prosecutions might bring additional deterrence, it's speculative to assume that we would bring additional prosecutions. And where redressability is speculative, standing is lacking. That's a clear, basic principle of Article III standing. And it doesn't hinge on any facts. So you're relying on Clapper for the latter point. Clapper, Blanton, Leak, you know, Linda RS. Too many layers of speculation. But are you challenging their position from Heckler, from footnote four in Heckler, that there could be this thing called abdication standing? Are you challenging that here? Yes, for two reasons. One, no court has ever suggested that the dicta in Cheney in that footnote applies in the criminal enforcement context. And Heckler v. Cheney itself recognized that administrative and civil non-enforcement decisions only resemble criminal decisions not to prosecute to some extent. And the second is that footnote suggests that reviewability might be available in the administrative context when there's been a complete abdication of duty. Now, we haven't abdicated our duty. We've decided to pursue prosecutions. Well, that's the thing. That's the thing. And that's why I asked you, I think, my first question. It had to do with whether this is really a non-enforcement policy and whether there's because at best it seems to me Heckler is talking about a truly egregious abdication. The district court thought so anyway. He thought if there was a truly egregious abdication. And I think the way he would say this is that it's the delta between what between the two burdens of intent, forgive me, burdens of proof to show the two levels of intent. And that by voluntarily assuming a higher burden that DOJ had abdicated that delta. But that's not the abdication that Heckler was referring to in that footnote. So before you – my question is do you agree that that's how the district court analyzed this, that that's the abdication? No, because I believe he said in his opinion that nothing short of a complete abdication would be reviewable under that potential. Well, that's what he said. And then he decides that there's an abdication here. Right. It seems to me at best that boiled down he has to be talking about DOJ because he stressed under Nixon, he stressed that DOJ doesn't decide what the law is, of course, and McKittrick does and that by assuming this additional burden that DOJ had abdicated. So if I'm missing and he connected the dots differently, could you help me out on how you read this order? Well, let's assume that's what he did hold, even though he said at the beginning of his opinion that nothing short of a complete abdication falls within the Heckler exception. Right. So he must have found a complete abdication, at least as to some part of this. Possibly. Because he recognized that Heckler only goes that far at best, right? And only in dicta and only in a case where the court said at the onset this deals with administrative, civil, non-enforcement. I appreciate that, but I don't think you're answering my question. I'm sorry, Your Honor. My question is do you think that he – since he's acknowledged all those points and they seem correct to me as I look at Heckler and as I look at Clapper and all the rest of it, and then he concludes that there's an abdication here. Clearly he does. And so I think at best it must be this by assuming an additional burden that to that extent DOJ had abdicated because it's making the burden tougher than Congress required. If there's another way to read this order, I'm asking you to tell me what it is. How else could he find abdication here? Well, our position is that he couldn't find abdication. But he did. I know. But even if, Your Honor, even if that was the theory that he used, that's not a valid – that's not an abdication within the meaning of Heckler because – I think you're not going to answer my question. I'm sorry, Your Honor. That's quite all right. I'm having a tough time understanding why he would answer that question. He's challenging the order. I understand that. I understand that, but I'm trying to figure – He's saying the same thing you're saying. He's challenging the order. I haven't voted. I'm just trying to figure out if there's something I'm missing because he clearly agrees with you, right, that at best Heckler does – and then you're insisting that he couldn't have found abdication. He found it. I don't know how the district court reached that conclusion. I do know that he's dead wrong. Okay. Fair enough. Because we have been successfully prosecuting illegal killings nationwide for 20 years. Well, you don't prove that here. You just talk about in the ninth, right, and then there's – Well, we've successfully prosecuted four Mexican wolf cases, right? So the argument is, well, maybe you could be prosecuting more. But that's on abdication. But that's my whole point. Clearly, opposing counsel can have an opportunity to respond here too. But to say that it's a non-enforcement policy when your briefing makes crystal clear that you've enforced to the extent at least of the four cases that you prosecuted, I am baffled. And so perhaps you are too. It's not a non-enforcement policy. It's a decision to pursue prosecutions under an alternative instruction designed to ensure consistency with Supreme Court precedent. It's non-justiciable. Their challenge is non-justiciable. And in any event, our approach is reasonable. Did you want to say something? Yes. Thank you, Your Honor. Does he have some help? Yes. He's got two minutes. Oh, yeah. Madam Clerk, would you put two more minutes on the clock since I took a fair amount of time? Thank you. So I will try to be brief to leave some time for my other friend. May it please the Court, Jonathan Wood for the Agricultural Intervenors. The one point I want to stress in my few minutes this morning is that the precise reason why the McKittrick memorandum instructs prosecutors to object to the McKittrick jury instruction is to set up the process of explaining to district courts why that decision is wrong. Both the federal government and we as intervenors have explained the process of why both Supreme Court prior to McKittrick and Supreme Court precedent after McKittrick shows that that decision cannot be sustained under current Supreme Court precedent. But that's not what DOJ is arguing. They're taking on a much bigger bite. I'm not sure why, but they're taking on a much bigger burden here. It's just a request for a jury instruction, right? The memorandum also speaks to objecting to a jury instruction. Fine. That's fine. But it doesn't change what the law is, and the district court is dead right about that. DOJ doesn't decide what the law is. Absolutely not. DOJ should explain to district courts why McKittrick is wrongly decided and should be considered no longer binding precedent under GAMI. And so that's the process that would be established under the McKittrick memorandum. And there are lots of arguments for why that must be the case. And the two points that we stress in our brief are that the take crime at issue here is not limited to hunting or shooting wolves. It is far broader, includes a wide variety of perfectly innocent and ordinary activities. If they inadvertently affect any of the insects, rodents or birds or any other species listed under the act. And finally, there are lots of other means to go about addressing take other than through the criminal enforcement, which does not. And those provisions don't require knowledge. So the lookalike provision could solve this problem. The strict liability civil fine could solve this problem. And, of course, injunctions can solve this problem. So under existing Supreme Court precedent, those alternative ways of addressing this concern reinforce the fact that this crime of take requires knowledge of all of the elements of the offense, including the identity of the species. And there are no questions. I will. Thank you. Thank you. Thank you. Good morning. May it please the court. Jeremy Claire for Appellant Safari Club International. I'd like to address why plaintiff's case should be dismissed due to their failure to file within the statute of limitations period. When plaintiffs filed their original complaint in May 2013, they failed to meet the six year limitations period applicable to their claims because they knew or should have known about the policy before May 2007. David Parsons worked for the Fish and Wildlife Service as its first Mexican wolf recovery coordinator from 1990 to 1999. He knew about the policy as early as 1998. In his declaration submitted to the district court, he did state that while he was employed at the Fish and Wildlife Service, he had concerns about the alleged impact of the policy on the service's Mexican wolf recovery objectives. Not included in his declaration submitted to that court were the facts that Mr. Parsons is an active member of both plaintiff's organizations. He was a founding board member and former chairman of the board of New Mexico Wilderness Alliance, one of the plaintiffs, and a former executive director of that organization. If we take your argument to the fullest, and this is the big question that I have as to the statute of limitations, isn't the best I can do to remand to see if they should have known? I think that's one approach you can take, Your Honor, but I do believe that the record as it stands now is... I mean, I understand the record that the plaintiff has submitted a FOIA request in 2012. They filed suit in 2013. Otherwise, I've got to say that since 1999, the Fish and Wildlife Service has routinely referenced the policy. Osario, a member of the plaintiff, was an attorney at the time of the memo. Environmental organizations complained about the decision in 2002. In the complaint, the plaintiff quoted one 2003 newspaper article. The law review article quoted public services. But all of that is merely should have known. I can't nub on new. Well, should have known is an appropriate standard. Well, isn't that something I send then to the district court to have a little hearing about? It is something this court would have to review that determination for clear error. I understand. So what you're really saying is I should make it now? I mean, I don't think equitable tolling would apply. I'm not sure when river would apply. So I guess I'm trying to figure out. It still seems my best, if I adopt your approach, is to send it back for a hearing. Yes, Your Honor. I think that, you know, if the alternative is that you agree with the district court, then certainly we would support sending it back instead. But, again, because of the new evidence about David Parson's leadership roles with one of the plaintiff organizations and his intimate relationship with both organizations, I think that there is enough evidence in the record to find that they knew of the policy before May 2007. Counsel, you're significantly over your time. Thank you for your argument. I'll raise this a little bit. Sure. I'm struggling with a cold. Thank you. You can move those microphones up if you'd like. That's great. Thank you. May it please the Court. Matthew Bishop for Plaintiff's Appellant, Wildworth Guardians et al. I'd really like to focus my time this morning on the standing issue. We're having trouble with standing. Yeah. And time permitting, address the merits. But before I do, I want to make one point on clarification. And that is that this case is a challenge to the Department's adoption of the McKittrick policy, a policy of general application that we allege violates the statute, not a challenge to an individual enforcement action or prosecutorial decision. And to be clear, this case does not seek to undermine prosecutorial discretion in any way. You know, I think your complaint, maybe because we have limited time, your complaint struck me as shooting for the moon. But in your briefing to our court, I think you have really scaled it back to this nub that I'm calling the nub. And I'm going to ask the same question, hopefully not as many times, about what the district court did here, because he's given you, he accepted your argument on Heckler that this abdication standing can exist. Right. Right? Right. And he accepted your argument that the lower burden of proof would necessarily serve as a deterrent. I think. That's right. That's right. How did he find abdication here? How did he find that this was a non-enforcement policy, given that they've enforced some of these, they've prosecuted some of these cases? Well, it's interesting. The evidence in the record doesn't suggest that they've actually prosecuted a case the way the instruction was interpreted by McKittrick, by this court, that in a case of mistaken identity, there's no evidence in the record that suggests that they actually pursued that type of case. And I think the concern here, Your Honor, is that they adopted a general policy that really rewrites the statute and disagrees with the circuit and basically says, as a matter of general policy, here's what we think the law is and what the law means. But that's the abdication? That's the abdication. Is the delta between what Congress said the law is going to require and what they've voluntarily assumed? And I think. Is that a yes? Yes, that is a yes. Okay. So if that's right, then don't you have to show that there are any cases within that delta? You mean specific cases that where they. . . Well, his argument is that hasn't even happened. You haven't shown that there has been any occurrence within that delta. Well. . . Where they would have prosecuted a case but for. . . I would argue, yeah. Okay. I mean, the issue in this case was resolved on cross motions for summary judgment. Right. And I would. . . I didn't handle the case below. But there was an administrative record filed. There was no discovery in this case. And we're not aware of any evidence in the record, and this includes even the evidence provided by Nick Chavez, the Declaration of Support of Fish and Wildlife, to suggest that a criminal take case that the kind of policy prohibits was ever pursued. So I think when we were talking, I think there is a complete abdication of this type of action. And even. . . Well, either that or they didn't have one referred to them where they could identify a potential defendant. Right. So there's a few issues there. The former director of the Fish and Wildlife Service said, again, in her sworn testimony, that because of the McKittrick policy, they weren't investing time, money, and energy into these investigations because there was this ready defense. And Mr. Chavez says, well, yeah, of the 130 illegal Mexico wolf mortalities, we referred 14 of those to the Department of Justice, and it wasn't because of McKittrick policy. That might be true, but his former boss said that might be because there weren't the resources and time invested in those investigations. But if it's a matter of resource allocation, why isn't that absolutely a matter of prosecutorial discretion? It is. It is. And at the end of the day, once those cases are referred, it's entirely up to the department to decide how they want to prosecute, if they want to prosecute, if they have the time and enough evidence. But I guess the point I'm trying to make is the McKittrick policy changed that whole decision-making process because the department is not going to prosecute. They made a specific decision through this policy, any case where there's a claim of mistaken identity. And I think that conflicts with the law. Go ahead. I'm trying to only ask my colleague's question because it seemed to me, in reading all of this, she struck a very good point to me. It doesn't seem to me that the policy is you don't prosecute. The policy is this is the type of a jury instruction you give when you prosecute. The type that you request. Yes. The type that you request, but the policy. There's no policy. It's just this is the jury instruction that you're to ask the judge to give. That's the only instruction you're to ask the judge to give. In other words, we're not going to enforce what we enforce, but this is the jury instruction you're now going to ask the judge to give. Unless we can prove that, we don't win. But, Your Honor, those cases aren't even going to court because of the policy. Just a minute. Just a minute. Again, answer her question because then at that point, the district judge has jumped to a conclusion that you can't really reach because all we have here is the Department of Justice saying to its prosecutors, if, in fact, you ever prosecute one of these cases, you only ask this instruction to be given. That's the only instruction you need to ask to be given. If you can't prove that, you don't win. That's what they're saying. They don't say don't enforce. All they're saying is this is the only instruction you can give in these cases based on what we think is Supreme Court precedent. And so, again, I'm trying to figure out how the district judge leaped to the conclusion that this is somehow an enforcement policy. They still enforce what they do. They just have a jury instruction to give to the jury, and this is what they've got to prove in those cases. I guess where I respectfully disagree, Your Honor, is I think the Department of Justice have taken a position to say we are not going to prosecute these types of cases because this is our interpretation of the law. This is how we interpret Section 11, the criminal penalty of the ESA provision. In other words, we're going to prosecute them only if we can prove, and they're voluntarily assuming a higher burden. That they knowingly pulled the trigger and that they knew the biological identity of the species. Okay, and so then I think that's what I understand from your brief, not from your complaint, but I understand that from your brief. And then you argue, though, that if they had not done that, if they had been treating this as a general intent crime, that there would be more deterrence. Right. Okay, so that's why I think you get into the same problem that seems contrary to your argument on the statute of limitations. Either knew or should have known. Your argument is we didn't know. If nobody knew about the McKittrick Memo for many, many years, how is it the case that the McKittrick Memo has made any difference to whether there's a deterrent or not? Well, that's a good question, and here's the difference. I think there's a difference between knowing that criminal prosecutions are not being made or that you have perhaps a ready defense of mistaken identity without knowing exactly why that is. So my clients didn't know, for instance, about the McKittrick policy. They knew there was a problem, that there were a significant number of illegal killings of Mexican wolves. It is and remains the number one threat to the species. But no one knew why there weren't more criminal prosecutions, and that's what prompted the FOIA and the discovery of this policy. And I think if you're a member of the public, you're not going to be aware of a specific policy, but you may know generally that you have a ready defense, that mistaken identification is a valid defense. And I think that's the difference. And how would I know that as a member of the public in a way that's going to make my trigger finger hesitate? Because I think that's what you have to show. I wouldn't have shot the wolf, right? Your Honor, I would have to concede that I think if this is a case, like the Washington Environmental Council V. Bellen case, where we were relying solely on the declarations of our members, it's an uphill battle. There are a number of links here and connections that have to be made in terms of causation and redress. But I think what makes this case so unique is the high volume of evidence in the record, including the Department's own statements that it's a deterrent. You know, if you look at the... Fish and Wildlife Service. And the Department. I mean, here's the interesting thing that's so unique. When the Department actually was briefing McKittrick, and all this is in the record, S.E.R. 19 to 20, they argue, and I'm quoting from the Department itself, that this type of policy would eviscerate the ESA's purpose because it would be nearly impossible to prove that a hunter recognized a particular subspecies protected by the Act. And in the policy itself, citing S.E.R. 41 to 42, they say this creates... We know this creates an enforcement hole that could prove problematic for some species and allow perpetrators to escape criminal punishment. So we have the Department's own statements. In addition to that, we have a declaration from the former head of the Mexican Wolf Recovery Program saying, and I'm going to quote from Mr. Parson's deck, that in his opinion, the policy results in a higher level of wolf mortality, which impedes recovery. We also have a sworn declaration from the Director of Fish and Wildlife saying that the policy has had a significant impact on the agency's ability to protect Mexican wolves. And we have the former senior enforcement officer for Fish and Wildlife, this is the Domenici deck, saying adoption of this policy was a game-changer and a major setback. It effectively eviscerated the deterrent effect. So you don't have to really believe my client's words for it. There's so much evidence here. Well, it seems like a statement of opinion. It eviscerated the deterrent effect. Well, even Mr. Chavez's declaration, if you look at it carefully, he says there were 14 cases referred to the Department for Fish and Wildlife. Nine of those were declined. He doesn't say why. He goes on to say that those referrals, this low number, had nothing to do with the McKittrick policy. But if you look at his exhibits attached to his very declaration, they undermine what he just said because in the exhibits they say the McKittrick policy is a problem and it has prevented prosecution throughout the West in a number of cases. And I'm citing from ER, I believe it's ER 119-128. So those are exhibits to Mr. Chavez's declaration. So if you look at the body of evidence, I guess, Your Honor, is what I'm trying to say, as you weigh it, this is a really unique case because you have the department actually doing a flip-flop, doing a 180-degree position on their interpretation of the law. You have the agency, Fish and Wildlife's own declarations. Plus— Is that a question of fact about whether or not there is a deterrent effect in the field as a result of this unknown secret McKittrick policy? So I think it's— I mean secret to the public. I think to the extent if standing is going to— I think the standing question is really about causation because if we can't prove causation, there's no redress. That's a problem. That's my problem. Right, and I agree it's a heavy lift. But what I think is unique about this case, if you go back and look at all the factual findings in the record, all the declarations, all the memos that were filed. But again, this was resolved on summary judgment, Your Honor. So under Lujan, it's a bit like you talked a little bit earlier about the different phases in the 12B6 phase, summary judgment phase. In Lujan, they said that at the summary judgment phase, setting forth by declaration or other evidence specific facts, for the purpose of summary judgment, those should be taken as true. So I think at this stage, this never went to trial. There was never depositions or discovery. I would certainly welcome the opportunity, if this is a factual issue that the Court's concerned about in terms of establishing causation, redress. I think it is a factual issue that this— maybe the proper Court should be a remand. What exactly is it you think is factual? If the causation—if there's a causation problem, whether or not approval of this policy is actually causing an uptick in illegal take, if that's a factual question, that certainly is going to be critical for standing. We think we have enough in the record right now, but I think instead of dismissing this case for lack of standing, I think the proper course would be to remand it back to the District Court to allow the parties to do discovery and stress out this issue more. Let me ask you a different kind of question. Go a little bit different at this. I was saying to myself, even if you win, what do you win? And my worry is, even if you win, the best you win is for the DRJ to be forced to determine on a case-by-case basis whether to prosecute offenders who take a Mexican wolf without knowing the biological identity of the animal. Would you say that's true? I think if we win, Your Honor— Isn't that the best you win? I think if you declare this policy invalid— Now, just a minute. All I have—all I'm trying to do is say, what is the ultimate result of what you do? The ultimate result is that I'm going to say the DOJ should determine on a case-by-case basis whether to prosecute offenders who take this gray wolf without knowing the biological identity of the animal. That's the best you're going to get. Consistent with McKissick. That's the best you're going to get. Right. Now, tell me, what is the significance of that? What have I done by that? That, to me, is a big question on standing. Where am I going? What does that get you? It doesn't get you anything. Yeah. Well, I think what it gets us is it gets the Department complying with the law, complying with McKissick and the ESA. And, Your Honor, let me back up. I understand the struggle there. I think— I mean, if I'm not going to change what goes on in the world, the prosecutions to be done, anything to be done any differently, if I'm not going to change anything, why should I say they're standing here? Well, because ultimately, at the end of the day, Your Honor, I don't think courts tell agencies what to do. Well, I agree. That's why I'm not sure you ought to be here. Now, if I go so far as you want me to go, the best I'm going to say is, you need to make another decision, only you need to make it on a different deal, and I haven't done anything. But there's always going to be discretion for the agency to decide how to handle or respond to a judge's decision. I'm only asking this Court to tell the Department, follow the law. And ultimately, it's going to be the decision. Can I ask you a related question right there? In the cases that have been prosecuted, this kind of goes back to a point. I was making earlier a point that Judge Smith is making right now. How was the jury charged in the cases that were prosecuted? Well, that's what's interesting, because those cases that were prosecuted, we don't have any evidence in the record, Your Honor, because this was resolved on ceremony of judgment. But we don't even know if those cases went to a jury? We don't even know if those cases went to a jury. We don't even know if those were criminal take cases. A lot of these cases are being prosecuted for possession. But isn't that something that would have been good for you to know? If you're going to bring this case, don't throw it back on the government. It seems to me you'd have gone down to the record and found out. But, Your Honor, we have actually all the information from the government itself and the policy itself saying that this is a problem. And one point I want to make on that issue is I do think this is very similar to the standing inquiry that happened in Bennett v. Speer, where you had irrigators who were suing the U.S. Fish and Wildlife Service for issuing a biological opinion, an advisory document, that was going to influence how the Bureau of Reclamation responded and maybe pulled water or not. They didn't sue the Bureau of Reclamation. And what the court said was the adoption of that policy or that advisory document had a coercive or influential effect on third parties. And that was enough to confer standing in that case. And I think this case, Your Honor, is analogous. How do you get around Linda R.? Linda R.S.? Yeah. Because this case is not a challenge to a specific enforcement or prosecutorial decision. And I think that's a critical decision. We are challenging a broad policy. And one case that I would see that was overlooked in the briefing that I would encourage this panel to look at on the distinction between challenging an individual decision and adoption of a broad policy is the D.C. Circus decision in Crowley Caribbean Transport, Vipina, 37F3rd at 676 of 677, because it talks about the differences between challenges to adoption of policy, which is a valid challenge in those two prosecutorial decisions. And it isn't in your brief, but I'm supposed to look it up? Well, Your Honor, it is cited, I believe, by the district court. My problem is don't talk about something you haven't briefed to me or I'm just going to say you waived it and here we're going. Well, I figured if it was in the brief, you probably already read it and knew it. So part of the opportunity. Our clerks have dug it up, so we've got that. You have another bit? Yeah, so listen, I think this is an interesting case on standing. I guess I would encourage the court to affirm the district court. It was resolved on summary judgment to the extent there are factual findings. How did he find this was an egregious abdication? How did he find that? Well, based on the evidence in the record that was presented. And, again, the agency's own – I mean, I think he really – Because the nature of what they're doing, is it because he viewed it as DOJ taking it upon itself to declare the law? Is that the egregious aspect? Right, because the policy interprets Section 7 – I'm sorry, Section 11 of the ESA. And so I think the Department – it's a question of law. That's the way we're presenting this case. It's purely a question of law. We're only asking you to declare the policy invalid because it violates congressional intent. All right. Thank you so much. Thank you, Your Honor. Could you put a minute on the clock, please, for the government? Going back to – I just want to clarify a comment you made, Your Honor, that maybe we're biting off more than we can chew, and I don't think that's accurate. I think we agreed that the decision here is not to request a particular jury instruction. On the standing issue, the redressability issue – I think you got around to that eventually, so, okay. The redressability issue is a problem of law. It has nothing to do with facts. Their redressability theory hinges on additional prosecutions being brought. A declaratory judgment would not require us to bring one additional prosecution in any future case, so there's no redressability. Their redressability argument, as they frame it, hinges on whether there's a deterrent effect because the wolves wouldn't be shot in the first place. And what is your response to that? What they say, the deterrent effect is redressability. Additional prosecutions would bring additional deterrents. So it presumes that there would be additional prosecutions. And even on the causation issue, there's no evidence – we have no idea why people are shooting wolves. But even if they're shooting wolves because of a perceived lack of deterrence, they're committing a criminal act. And if there's anything that's an independent action that breaks the causal chain for standing purposes, it's a criminal act. That's what our whole criminal justice system is about, and that's what the Court properly held in Austin. So all of this debate between the parties about, you know, the impact of the policy is ultimately legally immaterial. As a matter of law, under Linda R.S., under Simon, and for redressability problems, the plaintiffs lack standing. That's why no case like this has ever been brought before before a district court. Thank you, counsel. Thank you, Your Honor. Thank you both for your very helpful arguments. It's an interesting case. We'll take it under advisement and we'll stand in recess for today. Thank you.
judges: Fernandez, N.R. Smith, Christen